AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Joanna Natalie MACIAS<br><br>*Defendant(s)* | )<br>)<br>) Case No. 5:25-MJ-1059<br>)<br>) **SEALED**<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 17, 2025__ in the county of __Webb__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 111 | Assaulting, resisting, or impeding certain officers or employees |

This criminal complaint is based on these facts:

See Attached

☑ Continued on the attached sheet.

/s/ William Rempe
*Complainant's signature*

William Rempe, Special Agent
*Printed name and title*

Submitted by reliable means, sworn to, signature, atttested telephonically per Fed. R. Crim. P. 4.1:

Date: June 03, 2025

*Judge's signature*

City and state: Laredo, Texas    Christopher dos Santos, U.S. Magistrate Judge
*Printed name and title*

On May 17, 2025, Homeland Security Investigations (HSI) Special Agent (SA) William Rempe responded to investigate an incident that occurred at the Juarez-Lincoln International Bridge in Laredo, Texas. HSI SA William Rempe conducted interviews with U.S. Customs and Border Protection Officers (CBPOs), reviewed security camera footage, reviewed reports, and gathered written statements from the involved CBPOs to determine what occurred. The facts contained within this affidavit derive from all the sources to summarize the incident.

On May 17, 2025, at approximately 00:20 hours, Joanna Natalie MACIAS arrived at Juarez-Lincoln International Bridge in Laredo, Texas. MACIAS was positively identified when she presented CBP with Texas identification card ▓▓▓▓▓▓ which listed her date of birth as ▓▓▓▓▓ ▓▓ ▓▓▓▓. MACIAS was traveling in a vehicle alongside one adult male, and three children (ages 1, 2, and 5). Primary CBPO Adela Rondon, who was manning primary lane number eight (8), referred MACIAS to the secondary inspection area to determine the status of one of the children in the vehicle, who did not have adequate documentation. All occupants declared themselves to be United States citizens.

MACIAS was identified as being the driver of the vehicle, which was a silver-colored Chevrolet Tahoe with Texas registration plate ▓▓▓▓▓▓. The vehicle was registered to the adult male passenger of the vehicle, Joel Rodriguez of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

CBPO Rondon gave instructions to MACIAS to follow CBPO Rondon to the secondary inspection area. MACIAS failed to comply and began to drive away. CBPO Rondon utilized her radio to alert other CBPOs assigned to secondary to stop the Tahoe. CBPOs Joshua Bozek and Erica Garcia were able to stop the Tahoe and direct it back toward secondary lane three (3) through a gap in the median barrier. CBPO Garcia stated that she found MACIAS to be operating the Tahoe in an "aggressive" manner. While backing up the vehicle as directed by CBPOs, MACIAS backed the vehicle up and inadvertently struck one of the barriers, which fortunately resulted in no visible damage to the barrier or the vehicle. After hitting the barrier, MACIAS exited the vehicle and got into the back seat of the Tahoe. Rodriguez spoke to CBPO Bozek and offered to drive the vehicle in place of MACIAS and then drove the vehicle to secondary lane three (3). Rodriguez also stated to CBPO Bozek that MACIAS was "drunk" and not to worry about her.

CBPOs Bozek and Garcia both began noticing that that MACIAS and Rodriguez were exhibiting signs of impairment, such as slurred speech, glassy and bloodshot eyes, slow swaying of the body, and dilated pupils. CBPOs also noticed the odor of an alcoholic beverage emanating from MACIAS and the vehicle. All indicators of impairment observed by CBPOs are common with consuming alcoholic beverages. As the encounter continued, Rodriguez and MACIAS loudly argued and yelled at each other, with MACIAS yelling that being sent for secondary inspection was all Rodriguez' fault. MACIAS and Rodriguez became increasingly aggravated and uncooperative with CBPOs.

Secondary CBPO Kochan arrived and in conjunction with other CBPOs attempted to calm the situation so that the inspection could be conducted. Based on the apparent intoxication of MACIAS and Rodriguez, CBPOs determined that it was necessary for the Laredo Police Department to respond to the port of entry to ensure that MACIAS and Rodriguez could get home safely. MACIAS exited the Tahoe with the youngest child in her arms, while Rodriguez and the other children remained in the Tahoe. CBPO Kochan then briefed Supervisory CBPO (SCBPO) Moises Chavez on the case and CBPO Kochan advised MACIAS that Laredo PD was responding, which further enraged MACIAS leading to her yelling obscenities at all present CBPOs.

SCBPO Chavez approached MACIAS and attempted to calm her down. During the interaction between SCBPO Chavez and MACIAS, CBPO Jaime Rivera noticed that MACIAS was attempting to use her cell phone, which is prohibited by CBP in this area. MACIAS was advised multiple times to relinquish her cell phone, but she did not comply. CBPO Rivera reached for the cell phone, but MACIAS pulled away. SCBPO Chavez then quickly grabbed the cell phone out from MACIAS' hand and turned to hand it over to CBPO Rivera. While SCBPO Chavez was facing away from MACIAS, MACIAS raised her right hand and struck SCBPO Chavez on the left side of his face with her right hand. This moment is capture via CBP video footage via "POV Canopy .202/VCLAR02A146" at the 00:34:44 second mark.

In the immediate aftermath of the single strike from MACIAS, CBPO Garcia took control of MACIAS' right arm to prevent additional swings, however MACIAS' left arm was still clutching the 1-year-old child. For a period of approximately 25 seconds, MACIAS is restrained with one arm by CBPO Garcia while still holding the child. During this time, CBPOs make attempts to carefully remove the child from MACIAS' arms. CBPO Rivera eventually pulls the child from MACIAS, and steps back to ensure the child's safety. The child being removed from MACIAS' arm can be seen on CBP video footage via "POV Canopy .202/VCLAR02A146" at the 00:35:10 second mark.

Once the child was removed from MACIAS, CBPOs began attempting to handcuff MACIAS which resulted in MACIAS actively resisting the detainment. As CBPO Garcia attempted to secure MACIAS in handcuffs MACIAS rapidly turned her body left and right while kicking her legs aggressively. MACIAS struck CBPO Bozek's left knee with her right leg. CBPO Kochan was struck in his upper thigh/groin area by MACIAS' right leg. CBPO Bozek was able to restrain MACIAS legs by holding them together so she could no longer kick at CBPOs. As CBPOs attempted to secure MACIAS, CBPO Garcia noticed subject MACIAS' right hand near her duty belt. CBPO Garcia yelled "she's grabbing on to me". CBPOs were able to restrict MACIAS' movements by pinning her against the inspection table safely placing handcuffs on her.

The video footage does not clearly show MACIAS' as she is placed in handcuffs or the specific kicks that struck CBPOs Kochan and Bozek. The video does show that the process of handcuffing MACIAS appears to require multiple CBPOs and takes around 40 seconds.

MACIAS did not sustain or report any injuries while being secured in handcuffs. CBPOs Kochan and Bozek stated the kicks they received from subject MACIAS did cause pain but did not result in contusions. SCBPO M. Chavez reported minor pain to his left cheek.

Once MACIAS was successfully handcuffed, she was then escorted by CBPOs Jorge Gordillo and Tommy Cash to a CBP detention cell for a pat-down. CBPO Rondon conducted the pat-down on MACIAS. CBPO Rondon recovered a small plastic bag from MACIAS' right front pants pocket which contained a white powdery substance. CBPO Rondon inspected MACIAS' front left pocket and discovered another small plastic bag which also contained a white powdery substance.

SCBPO Morales and CBPO Garcia used the Scott Reagent G test kit to field-test the white powdery substance. The field test indicated that the white powdery substance possessed the properties of cocaine. All the contents of one of the small plastic bags was destroyed during testing. One small plastic bag containing white powder remained. The gross weight of the contraband is listed as .5 grams, as per CBP scales.

Prior to making a custodial arrest of MACIAS, SA Rempe was notified that while in CBP custody, MACIAS complained about abdominal pains and epileptic seizures. CBPO EMT Josue Flores was contacted to assess subject MACIAS' condition. CBPO EMT Flores recommended that Laredo Fire Department EMS be contacted due to possible seizures. MACIAS was transported to the Laredo Medical Center Hospital for medical evaluation. Based on the circumstances, no arrest of MACIAS was made on May 17, 2025.